# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES DEPARTMENT OF HOMELAND SECURITY, IMMIGRATION AND CUSTOMS ENFORCEMENT,<br><br>　　Plaintiff,<br><br>v.<br><br>BADRIYAH AWAD A ALASMARI,<br><br>　　Defendant. | CIVIL NO. 4:25-cv-3079 |

## EX PARTE APPLICATION FOR EMERGENCY TEMPORARY RESTRAINING ORDER

Plaintiff United States Department of Homeland Security, Immigration and Customs Enforcement ("ICE") asks this Court to issue an Emergency Temporary Restraining Order allowing Plaintiff to: (1) involuntarily feed and hydrate Defendant; (2) perform involuntary medical monitoring of Defendant; and (3) restrain Defendant, as necessary, in order to do so. Plaintiff's reasons are set forth as follows:

### FACTS

Badriyah Awad Alasmari, A# XXX XXX 426, is a citizen of Saudi Arabia and is presently detained at the Houston Contract Detention Facility ("HCDF") in Houston, Texas pursuant to the Immigration and Nationality Act. *See* Declaration of Carlo Jiminez (attached as Exhibit 1) at ¶ 4. She has been detained at the HCDF since June 25, 2025. *Id.* Prior to that, she was detained at the Richwood Correctional Center, in Monroe, Louisiana from May

5, 2025, through June 25, 2025, where she officially began her hunger strike, before being transferred to the HCDF for higher level medical care. *Id.*

On May 31, 2025, Ms. Alasmari missed her ninth consecutive meal and was classified as a hunger striker pursuant to ICE Health Service Corps. guidance. *See* Declaration of Alisha A. Wren, M.D. (attached as Exhibit 2) at ¶ 8 ("Wren Declaration"). She is currently on the 31st day of her self-imposed hunger strike and has missed over ninety consecutive meals. *Id.* at ¶ 8. Her last obtained weight on June 30, 2025, was 109 pounds—a roughly 17% loss compared to her baseline weight. *Id.* at ¶¶ 9, 20.

In the professional judgment of her treating physician Alicia A. Wren, M.D., if Ms. Alasmari continues her hunger strike, she will reach the point where she will require immediate medical intervention to prevent further deterioration and serious medical complications. *Id.* at ¶¶ 26-27. Continued fasting will present a high risk of adverse consequences such as permanent damage to her internal organs and the risk of death. *Id.* at ¶ 23. It will lead to severe metabolic imbalance, which if left untreated, will cause fatal arrhythmia and/or cardiac arrest. *Id.*

The ICE medical staff, including Dr. Wren, has explained to Ms. Alasmari the medical necessity to eat to preserve her health and the medical risks of continuing her hunger strike. *Id.* at ¶¶ 21-22. However, Ms. Alasmari has continually refused to eat solid food or drink nutritional supplements. *Id.* As a result, the current situation is critical and requires a Court order to administer involuntary feeding, hydration, and perform tests as medically necessary. *Id.* at ¶ 27.

**APPLICABLE LAW**

Temporary restraining orders serve to "preserv[e] the status quo and prevent[] irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*, 415 U.S. 423, 438–39, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974). The Federal Rules provide that courts may issue a temporary restraining order without notice to the adverse party only if: (1) "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition;" and (2) "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1).

The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987). To obtain this relief, a movant must establish: (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable harm absent preliminary relief, (3) that a balance of the equities favors the movant, and (4) that the relief would not disservice the public interest. *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 582 (5th Cir. 2013).

**ARGUMENT**

Here, the Government meets the standard for obtaining emergency injunctive relief. On its likelihood of success, the Government has demonstrated the urgency of the present situation and that involuntary feeding is appropriate considering the dire risks to the compelling interests at stake, i.e., Defendant's health and welfare. *See* Wren Declaration. This pursuit falls squarely within the Government's interest—and indeed duty—in caring for those

in its custody, including in "the preservation of life, prevention of suicide, and enforcement of prison security, order, and discipline[.]" *Grand Jury Subpoena John Doe v. United States*, 150 F.3d 170, 172 (2d Cir. 1998). In light of this duty, failure to adequately respond to Defendant's condition would potentially run afoul of federal laws and the Constitution. *See Hui v. Casteneda*, 559 U.S. 799, 804 n.3, 130 S.Ct. 1845, 176 L.Ed.2d 703 (2010) (wherein the Government conceded liability under the FTCA for medical negligence with respect to an immigration detainee); *cf. Helling v. McKinney*, 509 U.S. 25, 33, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993) (holding that the Constitution imposes a duty to assume responsibility for an inmate's safety and general well-being). Put plainly, the Government cannot stand idly by as Defendant puts her own health and well-being in peril.

There currently exists a substantial threat of irreparable harm absent the requested relief, since absent a TRO, the status quo of Defendant's health would change for the worse, and further deterioration may well result in irreparable damage to Defendant's health—including the possibility of death—and to the Government's efforts to maintain the good order of the institution and to preserve life and health. And in weighing the interests of the Government in the preservation of life, maintenance of institutional order, and costs associated with a hunger strike, courts have repeatedly held that these interests outweigh an immigration detainee's rights in maintaining a hunger strike. *See, e.g.*, *DHS v. Tortolo-Garcia*, No. 4:24-CV-02268, ECF No. 5 (S.D. Tex. June 18, 2024) (granting temporary restraining order to allow for involuntary medical monitoring, involuntary feeding, and hydration) (Ellison, J.); *DHS v. Ali*, No. 4:24-CV-02242, ECF No. 5 (S.D. Tex. June 14, 2024) (same) (Hanen, J.); *DHS v. Ivanov*, No. 3:19-CV-01573, ECF No. 6 (S.D. Cal. Aug. 22, 2019) (same);

4

*United States v. Ater*, No. 2:13-CV-02469 (D. Ariz. Dec. 11, 2013), ECF No. 8 (same). The public interest also overwhelmingly supports a TRO, as courts have repeatedly determined that the public policy favors the preservation of life and health. *Id.* Indeed, the district court in each of the aforementioned cases granted the relief sought, recognizing the overwhelming interests of the detainee's well-being at stake.

Finally, the declaration of Dr. Wren makes clear that the requested TRO is necessary to prevent immediate and irreparable damage. Defendant has been on a hunger strike for 31 consecutive days, and in light of the pressing need for medical intervention, delaying this proceeding to serve the Defendant and allow her to respond would perilously delay critical medical attention. The Government, through ICE staff, will seek to serve Defendant with the Complaint and this ex parte application for emergency temporary restraining order as soon as possible.

## CONCLUSION

For the foregoing reasons, the Government respectfully requests an immediate Order permitting it, through competent medical practitioners employed by or contracted with the federal government to: (1) involuntarily feed and hydrate Defendant; (2) perform physical evaluations on Defendant, take her vital signs, and perform laboratory testing; and (3) restrain Defendant, if necessary, to accomplish these procedures, in order to prevent injury, organ failure, and/or death due to her self-imposed hunger strike. Involuntary feeding would be accomplished through a nasogastric tube or intravenous (parenteral) means. And involuntary hydration, should it become necessary, would also be accomplished through intravenous

5

means. The Government asks that it be allowed to continue the requested involuntary medical treatment until it is no longer medically necessary.

The Government further requests that this Court set an expedited preliminary injunction hearing at its earliest convenience, at which time the Government will proceed with a motion for preliminary injunction, after completing service. The Government will also provide the Court with an update on Defendant's status. In the event Defendant ends her hunger strike during the pendency of this suit, and involuntary medical intervention becomes no longer medically necessary, the Government will file an immediate motion to vacate any preliminary relief granted and voluntarily dismiss this action.

Dated: July 2, 2025

    Respectfully submitted,

    NICHOLAS J. GANJEI
    United States Attorney

    *s/Jimmy A. Rodriguez*
    JIMMY A. RODRIGUEZ
    Attorney in Charge
    Assistant United States Attorney
    Texas Bar No. 24037378
    Federal ID No. 572175
    Southern District of Texas
    1000 Louisiana, Suite 2300
    Houston, Texas 77002
    Tel: (713) 567-9532
    Fax: (713) 718-3303
    Jimmy.Rodriguez2@usdoj.gov

    Attorneys for Defendants

## **CERTIFICATE OF SERVICE**

I certify that on July 2, 2025, the foregoing was filed and provided to ICE representatives to serve on Defendant.

*s/ Jimmy A. Rodriguez*
Jimmy A. Rodriguez
Assistant United States Attorney
